UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-10489-MEL

GLENN S. BATES,

                    Plaintiff

v.

TOWN OF HARWICH AND HARWICH
POLICE DEPARTMENT, CHRISTOPHER
KENDER, AND BARRY MITCHELL,

                    Defendants

DEFENDANTS CHRISTOPHER KENDER
AND BARRY MITCHELL'S
MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

I.    INTRODUCTION

This action arises from an unprovoked attack by plaintiff Glenn Bates ("Bates") upon

Harwich police officers Christopher Kender ("Kender") and Barry Mitchell ("Mitchell") with a

hockey stick, an attack which resulted in the shooting of plaintiff by Kender.  Plaintiff was

convicted on two charges of assault and battery with a dangerous weapon as a result of his

attack, while the officers were exonerated of wrongdoing following an investigation into their

actions by the District Attorney.

Despite his conviction and the DA's conclusion, plaintiff alleges that the officers'

conduct violated his civil rights and comprised common law torts.  Specifically, plaintiff alleges

that Kender used excessive force and violated his due process rights when he shot plaintiff in

order to halt the attack, and that both officers used excessive force and committed due process

violations against plaintiff following the shooting.  Amended Complaint, ¶¶7-9; Counts III-IV.[1]

Plaintiff asserts these claims pursuant to both 42 U.S.C. §1983 and G.L. c.12, §§H-I, the

Massachusetts Civil Rights Act ("MCRA").  In addition, plaintiff asserts claims against the

---

[1]The Amended Complaint contains two Count IVs.

officers for assault and battery and intentional infliction of emotional distress (Counts II, V).

Plaintiff also alleges claims against the Town of Harwich for common law negligence (Count I)

and a failure to train its police officers (Count IV).[2]

Defendants Kender and Mitchell seek summary judgment on all claims against them.

The officers submit that entry of summary judgment is warranted on plaintiff's claims arising

from Kender's shooting, because (1) they are barred by the doctrine set forth in Heck v.

Humphrey, 512 U.S. 483 (1994), and (2) notwithstanding the Heck doctrine, plaintiff is barred

by the doctrine of collateral estoppel from disputing the fact that he attacked the officers with a

hockey stick, and his assault rendered Kender's use of lethal force objectively reasonable,

pursuant to both substantive Fourth Amendment law and the doctrine of qualified immunity.

The officers further submit that entry of summary judgment is warranted on plaintiff's

claim of excessive force following the shooting, as these allegations are so inherently incredible

as to not merit a trial.

The within Memorandum is submitted in support of Kender and Mitchell's motion for

summary judgment.

## II.    STATEMENT OF FACTS

The relevant facts underlying this case are set forth in Defendants Kender and Mitchell's

Local Rule 56.1 Statement of Material Facts of Record, filed herewith.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

---

[2]The Amended Complaint also asserts negligence against defendants Kender and Mitchell (Count I), and intentional tort claims against the Town of Harwich (Counts II, V). All of these claims must be dismissed because public employees are immune from claims for negligence, while municipalities are immune from claims for intentional torts. See the Massachusetts Tort Claims Act, G.L. c.258, §2 and §10(c). The Town of Harwich is separately represented in this case.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should be entered where the non-moving party has the burden of proof and, based on the record before the Court, "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987). The moving party may prevail on summary judgment either by submitting affirmative evidence negating an element of the nonmovant's claim, or demonstrating that the nonmovant has no reasonable expectation of proving an element of the claim due to insufficient evidence. Fireman's Fund Ins. Co. v. Harley Realty Co., 24 F.Supp.2d 117, 118 (D.Mass. 1998, Keeton, J.).

IV.    ARGUMENT

    A.    Background to Complaint[3]

The following facts are not subject to dispute: On November 30, 2001, plaintiff's mother, Priscilla Hughes, sought and received from the Orleans District Court a Warrant of Apprehension, pursuant to G.L. c.123, §12(e), to have plaintiff apprehended and brought before the Court for a psychological evaluation. Statement, ¶4.[4] Kender, a Sergeant in the Harwich Police Department, was directed to serve the warrant; Kender asked Mitchell, a Police Lieutenant, to accompany him because Mitchell was familiar with plaintiff through numerous previous encounters. Statement, ¶¶6-7.

The officers arrived at Bates' residence, a structure containing multiple units, knocked on the outside door to the structure and announced themselves. Statement, ¶9. Upon receiving no response, the officers entered the unlocked door and ascended the narrow, "Cape Cod" style

---

[3] The following is a summary of events leading to the Complaint. A more detailed account of the facts underlying this action is contained within Kender and Mitchell's L.R. 56.1 Statement of Material Facts, filed herewith.
[4] Specifically, G.L. c.123, §12(e) provides that, upon apprehension, the person shall be examined for a determination whether "the failure to hospitalize the person would create a likelihood of serious harm by reason of mental illness," in which case "the court may order the person committed to a mental health facility for up to three days."

stairway to plaintiff's apartment, announcing themselves as they did so.  <u>Statement</u>, ¶¶10-11.  As

the officers ascended the stairway, Mitchell observed, through the crack underneath the door of

plaintiff's apartment, a pair of sneaker-clad feet moving from left to right.  <u>Statement</u>,¶12.

Kender, who was two to three steps behind Mitchell, heard someone running inside the

apartment.  <u>Id</u>.  Mitchell announced their presence again, to which plaintiff responded "Come on

in."  <u>Statement</u>, ¶13.  Mitchell poked his head through a crack in the door to observe the inside

area, and saw Bates standing to the side with a hockey stick raised above his head.  <u>Statement</u>,

¶14.  Bates brought the hockey stick crashing down towards Mitchell's head, but Mitchell pulled

back in time to escape its blow and turned to retreat down the stairway, attempting to grab

Kender as he went.  <u>Statement</u>,¶¶15-16.

      Pursuant to principles of estoppel and the doctrine set forth in <u>Heck</u> v. <u>Humphrey</u>, 512

U.S. 483 (1994), it is further undisputed that, as Mitchell retreated down the stairs, Bates struck

him on the back with the hockey stick, sending him staggering downward against the wall of the

stairway.  <u>Statement</u>,¶16.  Bates then advanced toward Kender, swung the stick "like a baseball

bat" and bludgeoned the top of Kender's head with it, knocking him to one knee.  <u>Statement</u>,

¶17.  Kender drew his pistol, trained it on Bates and yelled "Glenn stop! Glenn stop!"  <u>Statement</u>,

¶18.  Bates did not stop, and continued his assault by advancing toward Kender while raising the

stick in a cocking motion, twisting his body around so that part of his back was exposed to

Kender.  <u>Statement</u>, ¶19.  At this point Kender feared that, if Bates hit him with the hockey stick

again, he would lose consciousness and Bates would take his gun and kill him and Mitchell, and

possibly other persons in the area.  <u>Statement</u>, ¶20.  Kender then fired his weapon at Bates;

however, Bates continued toward him, showing no signs of being wounded.  <u>Statement</u>, ¶22.

Kender fired his pistol again, and Bates fell and slid to the bottom of the stairs.  <u>Statement</u>, ¶23.

Plaintiff denies attacking the officers with the hockey stick, and instead claims that the shooting was "unprovoked." <u>Amended Complaint</u>, ¶¶7-8; <u>Statement</u>, ¶34. However, as explained in detail below, plaintiff is barred from advancing such a proposition, since he was subsequently convicted by a Barnstable County Superior Court Jury of (1) assault and battery with a dangerous weapon on Kender, and (2) assault and battery with a dangerous weapon on Mitchell. <u>Statement</u>,¶37.

At the criminal trial, plaintiff testified to essentially the same version of facts as he did at deposition in the instant case. <u>Statement</u>, ¶¶32-34. Plaintiff also offered an alternative defense at the criminal trial: that even if he did assault the officers as charged, he was not criminally responsible due to mental disease or defect. <u>Statement</u>, ¶30. In support of this defense, plaintiff offered his own nonsensical testimony, <u>Statement</u>, ¶¶32-33, and that of two psychiatrists, who testified that plaintiff has "delusional" ideas and "a very disturbed mind," "is very paranoid" and suffers from mental illness that "substantially impaired his ability to both conform his conduct to the requirements of the law and … to appreciate the wrongfulness of his conduct." <u>Statement</u>, ¶31.

Bates further alleges that after he was shot, the officers jumped on him and kicked him repeatedly in the testicles, causing injuries for which he required surgery, stood on his hand, kneed him in the chest, "smashed" his head into the floor, kicked him in the head, dragged him through the doorway, and threw him down the stairway, causing him to break his tailbone. <u>Statement</u>,¶35. Bates' medical records reflect no injuries consistent with this alleged post-shooting beating, in that he received no treatment for any injury other than a single gunshot wound. <u>Statement</u>, ¶¶25, 36.

B.     Plaintiff's Excessive Force Claim Arising from the Shooting Should be Dismissed as Against Mitchell

Although the Counts of the Complaint do not specify which claims are set forth against which defendants, the Complaint's factual allegations, and the deposition testimony of plaintiff and the officers establish that it was Kender who shot plaintiff.  Amended Complaint, ¶7; Statement, ¶¶22, 23, 34.  As it is "axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions," Rogan v. Menino, 175 F.3d 75, 77-78 (1st Cir. 1999), and there is no evidence that Mitchell "encouraged" Kender to shoot Bates, this prong of plaintiff's excessive force claim lies against Kender only.  See Roy v. Inhabitants of City of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994).  Thus, this claim should be dismissed as against Mitchell.

C.     Plaintiff's Excessive Force Claim Arising from the Shooting Should be Dismissed As Against Kender

1.     The Standard for Examining the Use of Deadly Force

As with all claims of excessive force, an officer's use of deadly force is judged under the Fourth Amendment's "objective reasonableness" standard.  Brosseau v. Haugen, 543 U.S. 194, 197, 543 U.S. 194 (2004) (quoting Graham v. Connor, 490 U.S. 386, 388 109 S.Ct. 1865 (1989)); see also Napier v. Town of Windham, 187 F.3d 177, 183 (1st Cir.1999) ("the constitutionality of the use of deadly force … depends solely on whether the officer's conduct was "objectively reasonable").  Specifically, "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."  Brosseau, 543 U.S. at 197-98 (quoting Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694 (1985)); see also Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 23 (1st Cir.2005) ("[t]he test for whether the

use of deadly force is excessive is whether an objectively reasonable officer would believe that the suspect posed a 'threat of serious physical harm either to the officer or others'").

Where, as in this case, "potential danger, emergency conditions or other exigent circumstances are present," the standard for determining whether a use of force was reasonable "is comparatively generous to the police." Roy v. Inhabitants of City of Lewiston, 42 F.3d 691, 695; see also Graham, 490 U.S. at 396-97, 109 S.Ct. 1865 ("[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation"). As the First Circuit Court of Appeals has recognized, "the Supreme Court intends to surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases … And in close cases, a jury does not automatically get to second-guess these life and death decisions, even though the plaintiff has … a plausible claim that the situation could better have been handled differently." Roy, 42 F.3d at 695; see also Natal v. City of New Bedford, 37 F.Supp.2d 74, 77 (D.Mass.1999, Young, J.) ("courts in this Circuit do not second-guess officers, even if, in retrospect, a situation could have been handled differently").[5]

2.  Plaintiff's Excessive Force Claim Arising from the Shooting is Barred by the Heck Doctrine

A claim that "call[s] into question the lawfulness of a conviction" is not cognizable under §1983. See Heck v. Humphrey, 512 U.S. 477, 483, 114 S.Ct. 2364 (1994); see also Thore v.

---

[5]As the inquiry is not whether alternative means were available, but whether the chosen means were reasonable, plaintiff should not be heard to argue that Kender could have used a lesser amount of force to subdue him. See Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir.1997) ("[a] creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But … [t]he question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or pursue it"); compare U.S. v. Sokolow, 490 U.S. 1, 11, 109 S.Ct. 1581 (1989) (the constitutionality of an investigatory Terry stop "does not depend exclusively on whether the police employed the 'least intrusive investigatory means' available").

Howe, ---F.3d---, 2006 WL 3041978 at *5 (1ˢᵗ Cir., October 27, 2006); Figueroa v. Rivera, 147

F.3d 77, 80 (1998).  In Heck, the Supreme Court held that allowing a tort action to proceed

where the plaintiff has been convicted in the underlying criminal prosecution would risk

"parallel litigation over the issues of probable cause and guilt," "permit a collateral attack on the

conviction through the vehicle of a civil suit," and contravene the "strong judicial policy against

the creation of two conflicting resolutions arising out of the same or identical transaction."

Heck, 512 U.S. at 484-85.  As such, when a plaintiff seeks damages in a §1983 suit, "the district

court must consider whether a judgment in favor of the plaintiff would necessarily imply the

invalidity of his conviction or sentence."  If so, the suit must be dismissed.  Id., at 487; see also

Thore, 2006 WL 3041978 at *5 ("the district court must consider … whether the plaintiff could

prevail only by negating an element of the offense of which he was convicted").[6]

In this case, Bates may prevail on his excessive force claim arising from Kender's

shooting, only by negating an element of the offense of which he was convicted: assault and

battery with a dangerous weapon.  Therefore, this claim should be dismissed, pursuant to the

Heck doctrine.

Specifically, in order for Bates to succeed on his excessive force claim against Kender, a

jury would have to find that it was not reasonable for Kender to believe that Bates "posed a

threat of serious physical harm either to [him] or others."  Young, 404 F.3d at 23.  However, as

noted, Bates was convicted of assault and battery with a dangerous weapon on both Kender and

Mitchell, pursuant to G.L. c.265, §15A.  Statement, ¶37.  "The offense of assault and battery by

means of a dangerous weapon … requires that the elements of assault be present [and] that there

---

[6]Of course, a Section 1983 claim may proceed if the plaintiff shows that his conviction has been reversed.  Heck, 512 U.S. at 489.  Here, plaintiff testified at deposition that his criminal convictions were "overturned" by the Superior Court, "due to violation of his right to voir dire."  In fact, plaintiff appealed convictions, and said appeal was dismissed.  Statement, ¶38.

be a … battery … accomplished by use of an inherently dangerous weapon." Com. v. Appleby, 380 Mass. 296, 308 (1980). "An assault may be accomplished  … by putting another in fear of an immediately threatened battery," which is a "harmful or offensive touching." Com. v. Gorassi, 432 Mass. 244, 247 (2000). As such, Bates was convicted of putting Kender and Mitchell in fear of an imminent, harmful touching with a dangerous weapon, the hockey stick. Bates' convictions, therefore, conclusively establish that he placed Kender in fear of suffering imminent and serious physical harm and, accordingly, a judgment in Bates' favor in this case would necessarily invalidate his conviction in the underlying criminal case – "precisely the situation that Heck does not countenance." Sholley v. Town of Holliston, 49 F.Supp 2d 14, 18 (D.Mass.1999).

The First Circuit Court of Appeals recently held that, while Heck does not, in every instance, bar a Section 1983 claim for excessive force (since a state conviction does not necessarily imply that the defendant did not use excessive force), "[t]he excessive force claim and the conviction may be so interrelated factually as to bar the §1983 claim." Thore, 2006 WL 3041978 at *5. In Thore, the plaintiff alleged that the defendant officer used excessive force when he shot plaintiff as plaintiff "gunned" his car engine at the officer, after having rammed the officer's cruiser with the car – for which he subsequently pled guilty on a charge of assault and battery with a dangerous weapon. In his subsequent Section 1983 suit, the plaintiff set forth two theories of why Heck should not bar his claim. Under the first theory, the plaintiff claimed (as Bates claims here) that he was not guilty of assault at all, notwithstanding his guilty plea, and so

the officer's use of force was excessive.  "That theory," the Court held, "is plainly barred by

Heck."  Thore, 2006 WL 3041978 at *6.[7]

    The Court did not, however, rule that Heck barred plaintiff's claim (though the Court

dismissed the claim on other grounds), because the plaintiff alleged that "by the time of the

shooting, [he] was stationary in a car, boxed in with nowhere to go, and posed no threat to the

officers, who had been told that he had no gun."  Thore, 2006 WL 3041978 at *6.  Therefore, the

Court found, it could not determine that the "requisite relatedness" existed between the plaintiff's

provocative act and the officer's response to it, so as to bar the excessive force claim as a matter

of law.  Id., at *7.

    In so holding, the First Circuit relied on a case from the Ninth Circuit Court of Appeals,

Cunningham v. Gates, 312 F.3d 1148, 1154-55 (9th Cir.2002).  In Cunningham, the Court

applied Heck to bar an excessive force claim which arose from the aftermath of a robbery, in

which the police surrounded the getaway car and exchanged gunfire with the occupants.  The

plaintiff was convicted of murdering his partner-in-crime by provoking the police to shoot.

Because the underlying criminal conviction was dependent upon a finding that the plaintiff fired

the first shots, the Ninth Circuit found that "any civil claim that Cunningham was not the

provocateur necessarily fails as a result of the jury verdict."  Cunningham, supra.  Moreover, the

Ninth Circuit found that because there was no break between Cunningham's provocative act of

firing on the police and the police response that he claimed was excessive, the two issues were so

closely interrelated that Cunningham's conviction barred the excessive force claim as a matter of

law.  Cunningham, supra; contrast Smithart v. Towery, 79 F.3d 951, 952-953 (9th Cir. 1996)

(plaintiff's excessive force claim could proceed despite his conviction for assault based on act of

_____

[7]The Court did not explain this holding further, perhaps concluding that it is so obvious that a plaintiff may not
challenge a finding of criminal guilt in order to proceed on a subsequent civil claim, that no further explanation was
required.

trying to run sheriff over with his truck, where the alleged excessive force occurred after the plaintiff exited the truck and was therefore without access to his assault weapon, the truck).

The instant case is similar to <u>Cunningham</u>, and unlike <u>Thore</u>, in that the record shows that there was no break between Bates' provocative act of assaulting the officers with the hockey stick, and Kender's shooting to stop the assault. Mere seconds passed between the time Bates bludgeoned Kender with the hockey stick and the time Kender discharged his weapon – enough time only for Kender to draw his service pistol from his holster, yell "Glenn, stop! Glenn, stop!" and observe that Bates refused to heed his command. <u>Statement</u>, ¶¶24, 17-19. During these seconds, Bates advanced on Kender, cocking the hockey stick to hit him again, while Kender was prone on one knee. <u>Statement</u>, ¶19. Bates' assault on Kender was ongoing, and did not stop until Kender's second shot struck him. <u>Statement</u>, ¶¶19, 22-23. Based on these facts, the "requisite relatedness" exists between Bates' assault on the officers and Kender's shooting, so as to bar Bates' excessive force claim as a matter of law. Therefore, the Court should hold that Bates' excessive force claim arising from Kender's shooting is barred by the <u>Heck</u> doctrine, and dismiss this claim.

3.    Plaintiff's Claim Arising from the Shooting Should Also Be Dismissed Because the Shooting was Objectively Reasonable, Pursuant to Substantive Law and the <u>Doctrine of Qualified Immunity</u>

Even if this Court determines that the <u>Heck</u> doctrine does not bar plaintiff's claim for excessive force arising from the shooting outright, the claim should still be dismissed because plaintiff is barred by the doctrine of collateral estoppel from disputing the fact that he attacked the officers with a hockey stick, and Kender's use of deadly force in response to the attack was objectively reasonable, pursuant to both substantive Fourth Amendment law, and the doctrine of qualified immunity.

a.     <u>Bates Cannot Dispute the Fact of his Attack on Kender and Mitchell</u>

As a threshold matter, plaintiff is precluded from disputing the fact that he assaulted Kender (in the head) and Mitchell (in the back) with a hockey stick by the well-established doctrine of collateral estoppel.  As noted, plaintiff testified at his criminal trial that he did not assault either officer – the identical claim he makes in this case.  <u>Statement</u>,¶34.  However, the jury convicted Bates of assault and battery with a dangerous weapon on both officers.  <u>Statement</u>, ¶37.  Bates' conviction precludes him from asserting the contrary proposition in this matter, since "[i]t is well-established that the doctrine of collateral estoppel applies in civil rights actions brought pursuant to 42 U.S.C. §1983."  <u>Johnson</u> v. <u>Mahoney</u>**,** 424 F.3d 83, 93 (1st Cir.2005) (citing <u>Allen</u> v. <u>McCurry</u>, 449 U.S. 90, 96, 101 S.Ct. 411, (1980)) (arrestee was collaterally estopped from asserting §1983 claim for withholding of exculpatory evidence, by state appeals court ruling that arrestee was not prejudiced by the withholding); <u>see also</u> <u>Napier</u>, 187 F.3d at 184 ("[i]t is beyond doubt that issue preclusion applies to a federal civil rights action following a criminal conviction in state court").

For purposes of determining whether collateral estoppel applies to plaintiff in this case, this court must give to the state-court conviction "the same preclusive effect as would be given by the courts of the state from which the judgments emerged."  <u>Johnson</u>, 424 F.3d at 93.  As applied by Massachusetts courts, the doctrine of collateral estoppel holds that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  <u>Id.</u>; <u>see also</u> <u>Napier</u>, 187 F.3d at 184 ("[i]n the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment").  Further,

Massachusetts courts have abandoned the requirement of "mutuality of estoppel," so that "a party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution." Aetna Cas. & Sur. Co. v. Niziolek, 395 Mass. 737, 741-742 (1985).

In this case, it cannot be genuinely disputed that the issue of whether Bates attacked Mitchell and Kender with a hockey stick was "actually litigated" in the criminal trial, that the issue was "determined by a valid and final judgment," and that a finding that Bates attacked Mitchell and Kender with a hockey stick was "essential to the judgment[s]" of assault and battery with a dangerous weapon against Bates. See Johnson, 424 F.3d at 93. As such, the criminal jury's determination that Bates assaulted Mitchell and Kender with a hockey stick is "conclusive" in this subsequent action, and Bates may not contend otherwise.

b.    Kender's Use of Deadly Force Was Objectively Reasonable

An objectively reasonable officer in Kender's position would believe that Bates posed a threat of serious physical harm to himself, to Mitchell, and to members of the public. Therefore, this Court should find that the use of deadly force to subdue Bates, and prevent him from causing further injury, was reasonable, as a matter of law.

The following facts surrounding the shooting are not in dispute: (1) Bates was armed with a weapon that could inflict serious injury and possibly death; (2) he used the weapon to strike each of the officers, fiercely, on vulnerable parts of their bodies; (3) both officers possessed guns, which Kender reasonably feared plaintiff would take from them; (4) the incident took place in a confined area, on or near a narrow stairway; and (5) the officers knew that Bates suffered from mental illness. Statement, ¶¶3, 6. Faced with these facts, a reasonable officer would believe that Bates posed a threat of serious physical harm, and, therefore, that the use of deadly

force was justified. [8] Brosseau, 543 U.S. at 197-98. Indeed, these facts present greater justification for the use of lethal force than the facts in two cases in which the First Circuit Court of Appeals has approved the use of deadly force as consistent with Fourth Amendment standards of reasonableness. See Roy, 42 F.3d 691 (1st Cir.1994); Napier, 187 F.3d 177 (1st Cir.1999).

Specifically, in Roy, an intoxicated suspect advanced on three police officers while holding two small knives, flailing his arms around and ignoring the officers' orders to put down the knives. The suspect made a lunging motion toward the officers as they retreated backward toward a sharp downward incline, prompting one of the officers to shoot at, and hit, the suspect twice. Roy, 42 F.3d at 693. The Court affirmed summary judgment in favor of the officers, holding that no jury could find the use of lethal force objectively unreasonable under the circumstances, even though (1) the plaintiff asserted that he was seeking to put the knives down when he was shot; (2) the plaintiff had an expert who would testify that the officers' conduct was unreasonable; and (3) the Court acknowledged that "one might think that a hard look was warranted where three officers had to shoot and badly injure an intoxicated man who, although armed with two small knives, was flailing and stumbling about rather ineffectually." Id., 694-96.

In determining that the use of deadly force was not unreasonable, the Court noted the following factors: "[The suspect] was armed; he apparently tried to kick and strike at the officers; he disobeyed repeated instructions to put down the weapons; and the officers had other reasons … for thinking him capable of assault." Roy, at 695. As noted above, each of these factors was present in the instant case and cannot be disputed by plaintiff. And, significantly, unlike the plaintiff in Roy, Bates does not even offer an expert who would testify that Kender's use of force was unreasonable.

---

[8]In fact, Bates' assault caused Kender permanent injury to his right eye. Statement, ¶26.

The facts are also similar to those present in Napier, 187 F.3d 177, where two brother police officers, Richard and Ronald Ramsdell, both shot at the reportedly mentally disturbed plaintiff, Napier. Richard shot at Napier while running for cover as Napier pointed a gun at him, while Ronald shot at Napier twice – once after seeing him point the gun at his brother, and again after he saw Napier turn to face him while holding the gun. Ronald's second shot hit Napier. Napier, 187 F3d at 180.

Napier was subsequently convicted of (1) placing Richard Ramsdell in fear of imminent bodily injury with a dangerous weapon, and (2) recklessly creating a substantial risk of serious bodily injury to Richard Ramsdell with a dangerous weapon. The Court first allowed summary judgment in Richard's favor, finding that, pursuant to the doctrine of collateral estoppel, the criminal trial had conclusively established that Napier had pointed a gun at Richard, and that "[i]n light of these established facts … a jury could not find that Richard's conduct" was unreasonable. Id., at 184-85.

The Court then allowed summary judgment in Ronald's favor, even though Napier was acquitted of all criminal charges arising out of his conduct towards Ronald. The Court found that Ronald's first shot was justified by the fact that Ronald knew that "Richard had been threatened by a possibly mentally disturbed man with a gun and was at risk of serious bodily injury." Id., at 187. The Court found that the second shot was justified by the fact that Napier turned to face Ronald while holding the gun, "causing him to believe that he was now also placed at risk." Id. Although Napier disputed Ronald's contention that he pointed the gun at Ronald, the Court found that "Napier's self-serving claim that he did not point his gun at Ronald is not determinative. After what had already occurred, Napier need not have specifically pointed his gun at Ronald for Ronald to believe that the danger still existed and now also encompassed

him." Id., at 187-88

The Court's finding in Napier, that the officers' shooting was justified by plaintiff's mere *threat* toward the officers with a deadly weapon, manifestly provides a basis for a finding by this Court that Kender's shooting was justified by Bates' *actual*, and vicious, assault on the officers with a deadly weapon. Further, as in Napier, both Kender and Mitchell were in imminent danger of being assaulted again, "by a possibly mentally disturbed man with a [hockey stick] and [were] at risk of serious bodily injury." See Napier, at 187. Based on these indisputable facts, and the law of deadly force described above, it cannot be said that Kender's shooting of plaintiff was objectively unreasonable. Therefore, the Court should enter summary judgment on plaintiff's claim of excessive force, arising from Kender's shooting of him.

c. Kender Is Entitled to Qualified Immunity

Even were this Court to determine that a jury should decide whether Kender's actions were objectively reasonable under the Fourth Amendment, it should still enter summary judgment for Kender, pursuant to the doctrine of qualified immunity.

In actuality, inquiries into substantive liability and qualified immunity "entail essentially the same analysis." Natal v. City of New Bedford, 37 F.Supp.2d 74, 75-76 (D.Mass., 1999, Young, J.). This is particularly true in cases alleging excessive force. See Roy, 42 F.3d at 694 ("[i]n theory, substantive liability and qualified immunity are two separate questions … In police misconduct cases, however, the Supreme Court has used the same 'objectively reasonable' standard in describing both the constitutional test of liability, and the Court's own standard for qualified immunity); Napier, 187 F.3d at 182 ("[u]nfortunately for clarity's sake, the 'objective reasonableness' of the officers' conduct is crucial to both the qualified immunity and substantive liability inquiries").

The distinction between qualified immunity and substantive liability, if any, lies in the additional sheath of protection provided government officials by the doctrine of qualified immunity. See, e.g., Anderson v. Creighton, 483 U.S. 635, 638-39, 107 S.Ct. 3034 (1987) (doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law' or those who act where "the law clearly proscribed the actions"); Malley v. Briggs, 475 U.S. 335, 343, 106 S.Ct. 1092 (1986) (qualified immunity leaves "ample room for mistaken judgments"); Roy, 42 F.3d at 695 (qualified immunity is available in excessive force case, so long as conduct was not "so deficient that no reasonable officer could have made the same choice").

Generally, "[q]ualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." Brosseau, 543 U.S. at 198; see also Saucier v. Katz, 533 U.S., at 206, 121 S.Ct. 2151 (qualified immunity operates "to protect officers from the sometimes hazy border between excessive and acceptable force"). "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." Brousseau, 543 U.S. at 198.

When considering whether qualified immunity applies, the Court inquires, first, "whether the constitutional right in question was clearly established at the time of the alleged violation," and, second, "whether a reasonable, similarly situated official would understand that the challenged conduct violated the established right." Napier, 187 F.3d at 183. "It is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as

a broad general proposition." Brousseau, 543 U.S. at 198. While it is "clearly established" that the use of unreasonable force is unconstitutional, "that is not enough. Rather … [t]he relevant, dispositive inquiry … is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brousseau, 543 U.S. at 198-99. "Phrased another way, police officers are entitled to qualified immunity if reasonably well-trained officers confronted with similar circumstances could reasonably believe their actions were lawful under clearly established law." Napier, 187 F.3d at 183 (citing Anderson, 483 U.S. at 641). In making this inquiry, the Court should consider "cases relevant to the situation [Kender] confronted." Brosseau, 543 U.S. at 200.

As noted, the situation confronting Kender consisted of a mentally disturbed suspect attacking both him and his partner with a hockey stick in a manner that could have rendered either or bother officers unconscious. Further, as noted above, in at least two instances in this Circuit, the Court has found that the shooting of a suspect was justified in situations similar to that confronting Kender. Specifically, in Roy, officers were justified in shooting a suspect who was "armed with two small knives, [and] flailing and stumbling about rather ineffectually," while in Napier, officers were justified in shooting a reportedly mentally disturbed suspect who merely pointed a gun at one of them.

Based on these cases, no reasonable officer could think it unreasonable to shoot a mentally disturbed person as he attacked him and his partner with a hockey stick, as Kender did. At the very least, these cases "suggest that [Kender's] actions fell in the hazy border between excessive and acceptable force," and, as such, "they by no means clearly establish that [Kender's] conduct violated the Fourth Amendment." Brousseau, 543 U.S. at 200. Thus, Kender is entitled to qualified immunity on Bates' claim that the shooting comprised excessive force.

Kender is entitled to qualified immunity for the additional reason that his actions were in conformance with police department policy. Specifically, the Harwich Police Department's Use-of-Force policy in effect at the time authorized an officer to use deadly force "to defend himself or another from unlawful attack which he reasonably perceives as an immediate threat of death or serious physical injury." <u>Statement</u>, ¶21. No reasonable officer would believe that compliance with this rule, which conforms with the standard for the use of deadly force set forth in <u>Brousseau</u>, 543 U.S. at 197-98, would be unconstitutional. <u>Compare</u> <u>Medina</u> v. <u>Carey</u>, C.A. No. 03-40002 (D.Mass, 2005, Swartwood, M.J.) (officer was entitled to qualified immunity on excessive force claim stemming from failure to loosen handcuffs during cruiser ride back to station, where conduct conformed with department's policy prohibiting officer from stopping cruiser carrying suspect to police station). As previously noted, Bates' attack on Kender and Mitchell comprised a serious, immediate threat of serious physical injury or death toward the officers as well as members of the public. Therefore, pursuant to the department's policy, Kender was justified in shooting Bates, and should be entitled to qualified immunity on Bates' claim that the shooting comprised excessive force on these additional grounds.

D.  Plaintiff's Claim for Use of Excessive Force After the Shooting Should Be Dismissed Because his Allegations are Inherently Incredible

Plaintiff claims that, even apart from Kender's shooting, the officers used excessive force against him after he was shot when they "jumped on top of me and started beating me up." <u>Statement</u>, ¶35. According to plaintiff, the officers kicked him repeatedly in the testicles, causing injuries for which he required surgery, stood on his hand, kneed him in the chest, "smashed" his head into the floor, kicked him in the head, dragged him through the doorway and threw him down the stairway, causing him to break his tailbone. <u>Id</u>.

Plaintiff's allegations are insufficient to stave off summary judgment and warrant a trial on his post-shooting claim of excessive force. "The core purpose of the summary judgment procedure is to pierce the boilerplate of the pleadings and evaluate the proof to determine whether a trial will serve any useful purpose." International Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center, 103 F.3d 196, 205 (1st Cir. 1996). "Consequently, summary judgment cannot be sidestepped by pointing to evidence that is … inherently incredible." Id., at 206; see also Raskiewicz v. Town of New Boston, 754 F.2d 38, 45 (1st Cir.1985) (while Court must draw all reasonable inferences in favor of non-movant, the Court "cannot ignore uncontested facts that render inferences unreasonable or … fantastic"); Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir.1991) ("[g]enuine issues of material fact are not the stuff of an opposing party's dreams. [The nonmovant] must present definite, competent evidence to rebut the motion. … This evidence cannot be conjectural or problematic; it must have substance"); Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir.1991) (Court "need not … give credence to mere allegations ... By the same token, we cannot accept, in lieu of documented facts, conclusory assertions").

In this case, plaintiff's allegations of force after the shooting are conclusively negated by records of plaintiff's treatment after the shooting, which reflect no injuries consistent with the alleged post-shooting beating. Statement, ¶¶25, 36. Specifically, the "clinical resume" from Bates' hospital treatment (i.e. his Discharge Summary) indicate that the sole "reason for hospitalization" was a "gunshot wound." Id. Nor has plaintiff adduced any expert testimony corroborating his claim in this regard.

Bates' medical records are inherently reliable. See, e.g., Fed.R.Ev. 803(6) (providing that medical records are not hearsay); Manocchio v. Moran, 919 F.2d 770, 775 & 781 (1990) (stating

that "[r]eliability may be demonstrated … by showing that the evidence falls within a firmly rooted hearsay exception," and noting the "indicia of reliability" of "commonly admitted hospital records"). To allow plaintiff's wholly unsupported allegations to proceed to trial, where these allegations are conclusively negated by competent medical records, would require this Court to accept "evidence that is inherently incredible," "ignore uncontested facts that render inferences … fantastic," and "accept, in lieu of documented facts, conclusory assertions." As such, the Court should reject plaintiff's fantastical allegations regarding the officers' actions following the shooting, and dismiss the excessive force claim based on same. Compare U.S. v. Joost, 92 F.3d 7, 14 (1st Cir.1996) (rejecting appellant's signed statement that he did not have counsel when he entered nolo contendere pleas on state convictions, where Attorney General docket cards, police records, and conviction face sheets indicated that appellant was represented by counsel).

E.  Plaintiff's Due Process Claims Should Be Dismissed Because they are Subsumed by His Claims Under the Fourth Amendment

Bates further claims that the officers' actions deprived him of his right to due process of law. Amended Complaint, (Count III). However, where a plaintiff's constitutional claim arises from a seizure – including a seizure that resulted in alleged excessive force – such claims are analyzed exclusively under the specific provisions of the Fourth Amendment, rather than the general due process provisions of the Fifth and Fourteenth Amendments. See, e.g., Westover v. Reno, 202 F.3d 475, 479 n. 4 (1st Cir.2000); Graham, 490 U.S. at 395 ("*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process"

approach (emphasis in original)").  Therefore, plaintiff's due process claims are subsumed by his

Fourth Amendment claims and should be dismissed.[9]

     F.   Plaintiff's Intentional Tort Claims Should Be Dismissed

Plaintiff additionally asserts that Kender and Mitchell's conduct comprises assault and

battery and infliction of emotional distress.  Amended Complaint, (Counts II, V).  In the interests

of judicial economy, the Court should exercise pendent jurisdiction and dismiss these claims

along with the related federal claims, for the reasons set forth below, since they derive from a

common nucleus of fact and do not raise any novel or complex issues of state law. Vera-Lozano

v. International Broadcasting, 50 F.3d 67, 70 (1st Cir. 1993).

     1.    Assault and Battery

Where an officer does not use excessive force to execute a lawful seizure, a claim for

assault and battery must fail.  See Julian v. Randazzo, 380 Mass. 391, 396 (1980) ("an officer

authorized to make an arrest may use such force as is reasonably necessary to effect the arrest");

Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir.1991) ("the right to make an arrest …

necessarily carries with it the right to use some degree of physical coercion or threat thereof to

effect it").  As discussed above, the officers' use of force was reasonable, and plaintiff has not,

and cannot, claim that his seizure was not lawful.  Accordingly, his assault and battery claim

must fail.  Compare Sietins v. Joseph, 238 F.Supp.2d 366, 380 (D.Mass. 2003, Dein, M.J.)

(dismissing assault and battery claim where plaintiff did not prove excessive force was used).

---

[9]With respect to plaintiff's claim for excessive force under the MCRA, said claim should be dismissed because, in addition to the substantive deficiencies already addressed, plaintiff has not provided evidence of the "threats, intimidation or coercion" necessary to establish such a claim.  See G.L. c.12, §11H.  "A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion, and thus does not implicate the [MCRA]."  Longval v. Commissioner of Corrections, 404 Mass. 325, 333 (1989).

2.    <u>Intentional Infliction of Emotional Distress</u>

To prove intentional infliction of emotional distress, plaintiff must prove, among other things, that the defendants' conduct was extreme and outrageous.  <u>Howcroft</u> v. <u>City of Peabody</u>, 51 Mass.App.Ct. 573, 596 (2001).  Where police officers "merely carried out their obligations as law enforcement officials … their conduct 'as a matter of law cannot be deemed extreme and outrageous.'"  <u>Seitins</u>, 238 F.Supp.2d at 379 (quoting <u>Sena</u> v. <u>Commonwealth</u>, 417 Mass. 250, 264 (1994)).  As discussed above, Kender and Mitchell merely carried out their obligations as law enforcement officials in subduing and arresting plaintiff, and did not use force beyond that which was necessary to do so.  Accordingly, plaintiff's claim for intentional infliction of emotional distress should be dismissed.

IV.    <u>CONCLUSION</u>

WHEREFORE, defendants Christopher Kender and Barry Mitchell request that this Court enter summary judgment in their favor on all counts against them.

DEFENDANTS

CHRISTOPHER KENDER and
BARRY MITCHELL

By their attorneys,

/s/Joseph L. Tehan, Jr.
Joseph L. Tehan, Jr. (BBO # 494020)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.
101 Arch Street
Boston, MA  02110
617-556-0007

CERTIFICATE OF SERVICE

I, Jackie Cowin, certify that the above document will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system, upon notification by the Court of those individuals who will not be served electronically. /s/Jackie Cowin

282674/METG/0629