UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-10489-MEL

| | |
|---|---|
| GLENN S. BATES,<br><br>                    Plaintiff<br>v.<br><br>TOWN OF HARWICH AND HARWICH POLICE DEPARTMENT, CHRISTOPHER KENDER, AND BARRY MITCHELL,<br><br>                    Defendants | DEFENDANTS CHRISTOPHER KENDER AND BARRY MITCHELL'S L.R. 56.1 STATEMENT OF MATERIAL FACTS OF RECORD AS TO WHICH THERE IS <u>NO GENUINE ISSUE TO BE TRIED</u> |

INTRODUCTION

This action arises from an unprovoked attack by plaintiff Glenn Bates ("Bates") upon Harwich police officers Christopher Kender ("Kender") and Barry Mitchell ("Mitchell") with a hockey stick, an attack which resulted in the shooting of plaintiff by Kender. As a result of this attack, plaintiff was convicted on two charges of assault and battery with a dangerous weapon by a Barnstable County Superior Court jury.

Despite the conclusive nature of his convictions, plaintiff disputes the fact that he assaulted the officers with a hockey stick – in contravention of the doctrine set forth by the Supreme Court in <u>Heck v. Humphrey</u>, 512 U.S. 483 (1994), as well as long-established principles of collateral estoppel – and claims that Kender and Mitchell's conduct comprised civil rights violations and common law torts. Notwithstanding plaintiff's allegations, the following material facts are not subject to dispute.

MATERIAL FACTS NOT SUBJECT TO DISPUTE

1. At the time of the incident underlying the Complaint, plaintiff was a 40-year-old resident of Harwich who had had numerous encounters with members of the Harwich

|     | |
| --- | --- |
|     | Police Department, including Sgt. Kender and Lt. Mitchell.  <u>Excerpts of Deposition Testimony of Christopher Kender</u> ("Exhibit A"), p.26, l.14-p.27, l.20; p.29, l.1-11; p.30, l.6-15; p.32, l.21-p.33, l8.; <u>Excerpts of Deposition Testimony of Barry Mitchell</u> ("Exhibit B"), p.23, l.6-7; p.24, l.12-19; <u>Excerpts of Deposition Testimony of Glenn Bates</u> ("Exhibit C"), p.52, l.12-13; p.54, l.10-13. |
| 2.  | Some of these encounters involved violence by plaintiff, including one episode in which he knocked a victim to the ground and bit his right arm, another in which he knocked the victim to the ground and kicked him with his motorcycle boots, and a third in which he bit the hand of a police officer.  <u>Exhibit A</u>, p.27, l.12-20; p.29, l.1-11; p.33, l.1-5.  Mitchell himself had been involved in a physical altercation with plaintiff.  <u>Exhibit B</u>, p.23, l.21-p.24, l.1. |
| 3.  | Plaintiff has an extensive history of mental illness, of which Mitchell was aware.  <u>Exhibit B</u>, p.25, l.14-17; p.26, l.11-p.27, l.4. |
| 4.  | On November 30, 2001, Bates' mother, Priscilla Hughes, obtained a Warrant of Apprehension from the Orleans District Court, pursuant to G.L. c.123, §12(e), to have plaintiff apprehended and brought before the Court for a psychological evaluation.  <u>Warrant of Apprehension</u> ("Exhibit D"). |
| 5.  | In her application for the Warrant of Apprehension, Mrs. Hughes stated that plaintiff had exhibited "violent rage[s]," and "threaten[ed] to hurt police if I ever called them about him."  <u>Exhibit D</u>, Application. |
| 6.  | Kender was directed by his dispatcher to serve the Warrant of Apprehension on plaintiff.  <u>Exhibit A</u>, p.41, l.7-16; p.48, l.12-14.  Kender was aware that a Warrant of |

       Apprehension orders that the subject of the Warrant be brought before the Court for a psychological evaluation.  Exhibit A, p.41, l.17-p.42, l.4

7. Kender requested Mitchell's assistance in serving the Warrant, because Mitchell believed he had developed a rapport with plaintiff through his numerous encounters with him.  Exhibit A, p.51, l.4-14; Exhibit B, p.28, l.2-7.

8. Kender wore a full police uniform when the officers went to serve the Warrant; Mitchell, a detective, was wearing plainclothes, with his badge attached. Exhibit A, p.49, l.14-16; p.50, l.4-16.

9. When the officers arrived at Bates' residence – a multi-family structure in which Bates lived in the upstairs, rear apartment –Mitchell knocked on an outside door at the rear of the building and announced "it's the Harwich Police Glenn, I have to talk to you."  Exhibit A, p.54, l.24-p.55, l.3; p.56, l.1-3; Exhibit B, p.28, l.18-24; p.29, l.5-17.

10. After receiving no response, the officers entered the building through the rear door, which was unlocked, and ascended a staircase that led directly to plaintiff's apartment.  As they ascended the stairs, Mitchell again announced their presence and yelled plaintiff's name.  Exhibit A, p.56, l.6-8; p.57, l.10-13; Exhibit B, p.31, l.1-5.

11. The staircase leading to plaintiff's apartment was a very narrow, "Cape Cod" style of stairway.  Exhibit A, p.58, l.23-p.59, l.2; Exhibit B, p.30, l.7-12.;

12. As the officers ascended the stairs, Mitchell observed, through the crack underneath the door of plaintiff's apartment, a pair of sneaker-clad feet moving from left to right. Exhibit B, p.31, l.8-14.  Kender, who was two to three steps behind Mitchell, heard someone running inside the apartment.  Exhibit A, p.58, l.1-6; p.59, l.17-19.

13. Mitchell reached the top of the stairway, went to the door of plaintiff's apartment, and again announced the officers' presence. A voice from inside the apartment said "Come on in." Exhibit A, p.60, l.5-18; Exhibit B, p.31, l.15-17.

14. Mitchell, who did not have his weapon drawn, pushed the unlocked door open, poked his head into the doorway, and looked to the right, the direction in which he had seen the feet move. Exhibit A, p.61, l.23-p.62, l.1-8; Exhibit B, p.32, l.1-4. At that moment he saw plaintiff, off to the side with a hockey stick raised above his head "like an ax." Exhibit B, p.32, l.6-13.

15. Bates brought the hockey stick down in a chopping maneuver toward Mitchell's head, but Mitchell pulled back in time to escape its blow, and the stick struck the ground. Exhibit A, p.62, l.9-13; Exhibit B, p.32, l.6-13; p.34, l.20-22.

16. Mitchell turned to retreat down the stairway, attempting to grab Kender as he went. Exhibit A, p.62, l.19-21; Exhibit B, p.32, l.14-23. As he did so, Bates struck him on the back with the hockey stick with a "very jarring blow," which threw Mitchell off-balance and sent him staggering downward against the wall of the staircase. Exhibit A, p.63, l.7-10; Exhibit B, p.33, l.1-3; p.37, l. 11-14.

17. Bates then crossed the threshold of his apartment and advanced toward Kender while swinging the hockey stick in a threatening manner. Exhibit A, p.66, l.8-17. Bates then swung the stick "like a baseball bat" and bludgeoned the top of Kender's head with it, knocking him to one knee. Exhibit A, p.67, l.24-p.68, l.1; p.70, l.6-10, l.17-20; Exhibit B, p.33, l.15-18.

18. Kender drew his pistol, trained it on Bates and yelled "Glenn stop! Glenn stop!" Exhibit A, p.70, l.24; p.72, l.4-5; Exhibit B, p.39, l.18-21.

19. Bates did not stop, and instead advanced toward Kender, descending the stairs to the second step from the top. Exhibit A, p.72, l.7-24. As he did so, Bates raised the stick in a cocking motion, preparing to strike again. Exhibit B, p.39, l.21-23; p.66, l.9-12. The cocking motion twisted Bates' body around so that part of his back was exposed to Kender. Exhibit B, p.66, l.12-21.

20. At that moment, Kender feared for his life, Mitchell's life, and the life of any person in the area, believing that, if Bates hit him with the hockey stick again, he would lose consciousness and Bates would take his gun and kill him and Mitchell. Exhibit A, p.73, l.13-19; p.82, l.7-12.

21. At the time of the incident, the Harwich Police Department's Use-of-Force Policy, which was enacted by the Massachusetts Police Institute, authorized an officer to use deadly force "to defend himself or another from unlawful attack which he reasonably perceives as an immediate threat of death or serious physical injury." Policy & Procedure No. 400 ("Exhibit E"), Section IX.

22. Kender fired his weapon at Bates, aiming at Bates' "center mass" – i.e. the area of Bates' body that was facing him. Exhibit A, p.75, l.13-20, p.79, l.1-6. After the shot, Bates continued toward him, swinging the hockey stick from side to side and showing no signs of being wounded. Exhibit A, p.80, l.12-16; p.81, l.11-16; Exhibit B, p.39, l.24-p.40, l.2.

23. Kender fired his pistol again, after which Bates fell and slid to the bottom of the stairs. Exhibit A, p.80, l.1-2, p.80, l.20-p.81, l.4; Exhibit B, p.40, l.2-6.

24. The encounter between the officers and Bates "happened in a matter of seconds," Exhibit B, p.38, l.4-6; p.62, l.19-20. A "very, very short interval" occurred between the firing of the first and second shots. Exhibit B, p.67, l.8-9.

25. Bates was brought to Cape Cod Hospital in an ambulance called for by Mitchell. Exhibit B, p.41, l.23-24. The "clinical resume" from Bates' hospital treatment (i.e. his Discharge Summary) indicates that the sole "reason for hospitalization" was a "gunshot wound." Clinical Resume ("Exhibit F"), p.1.

26. Meanwhile, Kender was diagnosed with a serious concussion and post-concussion syndrome, for which he missed six to seven weeks of work. Exhibit A, p.98, l.10-11; p.99, l.7-11, p.101, l.14-22. The concussion caused permanent disfigurement to Kender's right eye, which remains more dilated than his left eye. Exhibit A, p.105, l.20-23.

27. Mitchell was treated for contusions to his back, caused by the blow from the hockey stick, and abrasions to his skin caused by his sliding along the wall. Exhibit B, p.46, l.3-4, l.13-20.

28. As a result of the November 30, 2001 incident, Bates was charged in Barnstable Superior Court with two counts of assault and battery with a dangerous weapon, and two counts of assault and battery with intent to kill. Indictment Slips ("Exhibit G").

29. At his criminal trial, Bates presented two, mutually exclusive defenses. First, Bates claimed that he did not assault either Kender or Mitchell, and that they shot him without provocation. Excerpts from Trial Testimony of Glenn Bates in C.R. No. 2002-0019 ("Exhibit H"), p.320, l.20-p.324, l.8.

30. Alternatively, Bates claimed that, even if he did commit the crimes as charged, he was not criminally responsible due to mental disease or defect. <u>Excerpts from Jury Instructions in C.R. No. 2002-0019</u> ("Exhibit I"), p.518.

31. In support of the latter defense, Bates offered the testimony of a psychiatrist, who testified that Bates suffers from a constant sense of "persecution;" that "he perceives things in a different way than others;" and that he "misinterprets perceptions into meanings of high threat and high danger [so] that he could not conform himself … to doing what the law might require." <u>Excerpts of Testimony of Dr. Marc Whaley in C.R. No. 2002-0019</u> ("Exhibit J"), p.367, l.11-15; p.372, l.20-21; p.374, l.18-19; p.375, l.1; p.376, l.9-14; p.378, l.6-7; p.379, l.9-17. Bates also offered the testimony of a psychologist, who testified that Bates has "delusional" ideas and "a very disturbed mind," "is very paranoid" and suffers from mental illness that "substantially impaired his ability to both conform his conduct to the requirements of the law and … to appreciate the wrongfulness of his conduct." <u>Excerpts of Testimony of Dr. Frank DiCataldo in C.R. No. 2002-0019</u> ("Exhibit K"), p.389, l.12-14; p.395, l.16-17; p.397, l.10-11; p.407, l.14-15; p.408, l.17-22.

32. Bates' criminal trial testimony regarding the November 30, 2001 incident was similar to testimony he offered at deposition in the instant case. Specifically, Bates testified that on that morning, he was suffering from severe carbon monoxide poisoning due to malfunctioning heating equipment in his apartment. He also was "choking to death" due to a gas leak outside his home. Exhibit C, p.91, l.5-15; Exhibit H, p.301, l.18-19; p. 302, l.18-20; p.311, l.22  According to Bates, the carbon monoxide and gas fumes gave him a stroke, which paralyzed him on his left side. Exhibit H, p.300, l.8-23;

p.302, l.11-17; p.310, l.18-20.  Bates further testified that he was drinking large quantities of water and eating a high-protein diet, which caused his brain to swell. Id., p.304, l.11-18; p.305, l.22-23.  Bates also stated that he had taken codeine pills the night of November 29, which his mother gave him because "she was trying to poison [him]."  Exhibit C, p.71, l.6-13; p.72, l.2-5.

33. According to Bates, when the officers arrived, he was in a semi-comatose state. Exhibit C, p.92, l.17-20.  He also claimed that he was listening to stereo headphones at the time, and could not hear anything above the music.  He stated that he awoke when he felt his bed vibrating.  Exhibit C, p.124, l.7-13; Exhibit H, p.317, l.5-12.

34. Bates claimed at the trial and at deposition that Kender shot him "without any provocation," and that he did not assault the police officers.  Exhibit C, p.116, l.12-15; p.123, l.17-23; p.125, l.9-19; Exhibit H, p.320, l.20-324, l.8.

35. Bates further testified that after he was shot, the officers "jumped on top of me and started beating me up."  He claims that the officers kicked him repeatedly in the testicles, causing injuries for which he required surgery, stood on his hand, kneed him in the chest, "smashed" his head into the floor, kicked him in the head, dragged him through the doorway and threw him down the stairway, causing him to break his tailbone.  Exhibit C, p.117, l.2-5; p.122, l.2-5, p.125, l.23-p.126, l.5; Exhibit H, p.324, l.20-p.325, l.5.

36. Plaintiff's medical records reveal neither injury nor treatment consistent with his allegations of a post-shooting beating.  Exhibit F.

37. At the conclusion of the criminal trial, the jury convicted Bates on both charges of assault and battery with a dangerous weapon.  Verdict Slips ("Exhibit L").

38. Plaintiff testified at deposition that his criminal convictions were "overturned" by the Superior Court, "due to violation of his right to voir dire." <u>Exhibit C</u>, p.133, l.12-18. In fact, plaintiff appealed his convictions, and said appeal was dismissed. <u>Appeals Court Docket for Case No. 2003-P-1526</u> ("Exhibit M").

39. The Barnstable County District Attorney's Office conducted an inquest into the November 30, 2001 incident, and concluded that neither Kender nor Mitchell committed any wrongdoing. <u>Report of the District Attorney's Office</u>, ("Exhibit N").

40. The inquest also concluded that (1) "the forensic evidence is consistent with Sgt. Kender's account that he fired upward at [Bates] as [Bates] advanced upon him from further up the stairs;" (2) "the wound path of the round which struck [Bates] is also consistent with an upward right to left shot into the body of [Bates] as he exposed his right flank to the officer;" and (3) "the round's path is consistent with it having entered the right flank of [Bates] … and it having exited from the left back." <u>Exhibit M</u>, "Analysis," ¶¶5-7.

        DEFENDANTS
        CHRISTOPHER KENDER
        and BARRY MITCHELL,

        By their attorneys,

        /s/Joseph L. Tehan, Jr.
        Joseph L. Tehan, Jr. (BBO # 494020)
        Jackie Cowin (BBO# 655880)
        Kopelman and Paige, P.C.
        101 Arch Street
        Boston, MA  02110
        617-556-0007

CERTIFICATE OF SERVICE

I, Jackie Cowin, certify that the above document will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system, upon notification by the Court of those individuals who will not be served electronically. /s/Jackie Cowin

282249/METG/0629

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-10489-MEL

| | |
|---|---|
| GLENN S. BATES,<br><br>          Plaintiff<br>v.<br><br>TOWN OF HARWICH AND HARWICH POLICE DEPARTMENT, CHRISTOPHER KENDER, AND BARRY MITCHELL,<br><br>          Defendants | ATTACHMENTS TO DEFENDANT CHRISTOPHER KENDER AND BARRY MITCHELL'S L.R. 56.1 STATEMENT OF MATERIAL FACTS OF RECORD AS TO WHICH THERE IS NO GENUINE ISSUE <u>TO BE TRIED</u> |

**Attachments A through N to Defendant Christopher Kender and Barry Mitchell's L.R. 56.1 Statement of Material Facts of Record as to Which There is no Genuine Issue to be Tried, are to be filed by hand with the Court, and served upon counsel of record by mail, on November 15, 2006.**

DEFENDANTS
CHRISTOPHER KENDER
AND BARRY MITCHELL,

By their attorneys,

/s/ Joseph L. Tehan, Jr.
Joseph L. Tehan (BBO# 494020)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.
101 Arch Street
Boston, MA 02110
(617) 556-0007

CERTIFICATE OF SERVICE

   I, Jackie Cowin, certify that the above document will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system, upon notification by the Court of those individuals who will not be served electronically. /s/Jackie Cowin

298696/METG/0629