UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
GLENN S. BATES,                     )
                                    )
            Plaintiff,              )
                                    )
v.                                  )    C.A. NO. 05-10489-MEL
                                    )
TOWN OF HARWICH and                 )
HARWICH POLICE DEPARTMENT,          )
CHRISTOPHER KENDER and              )
BARRY MITCHELL,                     )
                                    )
            Defendants.             )
_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO ALL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Plaintiff Glenn S. Bates submits this memorandum in opposition to the motion for summary judgment of Defendants Town of Harwich, Harwich Police Department, Christopher Kender and Barry Mitchell.

I.   INTRODUCTION

On November 30, 2001, Glenn Bates was shot *in the back* by Harwich police officer Christopher Kender. The shooting occurred inside of Mr. Bates' own home. The damage caused by the gun shot wound was severe. The bullet fractured his spine. Mr. Bates also suffered a shattered kidney and spleen in an assault by the officers that ensued. The bullet also fractured plaintiff's spine. Plaintiff underwent surgery to have the destroyed organs removed.

Officer Kender and his supervisor, Lieutenant Barry Mitchell, were in the home to serve Mr. Bates with a warrant of apprehension. Both officers at the scene knew that Mr.

Bates had severe mental disabilities. Nonetheless, the officers failed to appropriately handle the situation. Instead, they crept into Mr. Bates' house with guns drawn. The lead officer was not wearing a police uniform. When Mr. Bates saw a gun in his apartment he lashed out at it – striking the officer's hand with a hockey stick. He then slammed the door on the officers, striking both of them. As a result of these actions, Mr. Bates was found guilty of this battery upon the officers.

Through this suit, however, Mr. Bates does not seek to undo his conviction for that battery, but rather seeks damages for the excessive use of force used by the officers *after* that battery occurred. Indeed, *after* the actions that led to Mr. Bates' conviction for battery, he turned his back to the officers and was no longer a threat to them. Nonetheless, the officers first shot him in the back and then began to physically beat Mr. Bates while he was lying on the ground, incapacitated from his gunshot wounds. The officers then inflicted pain upon Mr. Bates in an attempt to prompt a false confession from him.

Defendants Kender and Mitchell seek summary judgment purportedly because (1) Mr. Bates' claims are barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994); and (2) that the claims are barred by the doctrine of collateral estoppel. Defendants Kender and Mitchell are incorrect. Based upon the facts of this matter, which for purposes of summary judgment must be taken in the light most favorable to Mr. Bates, the doctrine set forth in *Heck* simply does not apply. As set forth below, Mr. Bates' claim for excessive use of force *after* the battery of the police officers would not "necessarily demonstrate" the invalidity of the underlying conviction and, therefore, *Heck*

has no application here. Furthermore, there are triable issues of fact that are not appropriate for summary judgment with respect to all arguments made by the Defendants.

II.     STATEMENT OF FACTS

The relevant facts of this case are set forth in Plaintiff's Response to Defendants' Statement of Material Facts submitted herewith and incorporated herein by reference.

III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is only warranted if, *after reviewing the facts in the light most favorable to the nonmoving party*, no genuine issues of material fact remain. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). In making its determination, the Court must view all evidence in the light most favorable to the nonmovant and is to draw all reasonable inferences in favor of the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992); *Mediacom Corp. v. Rates Tech., Inc.*, 4 F.Supp.2d 17, 33 (D. Mass.1998).

A Court should not prevent a case from reaching a jury simply because the court favors one of several reasonable views of the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The moving party bears the burden of showing that there is no genuine issue of material fact and that it is therefore entitled to judgment as matter of law. *Anderson*, 477 U.S. at 250; *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322- 24 (1986).  If the movant satisfies this burden, the nonmovant must proffer evidence demonstrating the existence of a genuine issue of material fact. *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983).

IV.     ARGUMENT

**RESPONSE TO DEFENDANT MITCHELL'S AND KENDER'S MOTION FOR SUMMARY JUDGMENT**

A.      Factual Background[1]

In order to provide some background, and to emphasize that many of the facts asserted by Defendants are not undisputed, Plaintiff submits the following facts for the Court's convenience:

On the day in question, Officer Kender was on notice that Mr. Bates had a history of combative behavior towards police because he witnessed such combative behavior and was also informed of such combative behavior by other police officers. *See* Plaintiff's Doc.Aff., Exhibit 2, Deposition Testimony of Sargent Christopher Kender) at pg. 38. When applying for the warrant of apprehension, Mr. Bates' mother informed the Court that "Glenn was threatening to hurt police if [she] ever called them about him," but Officer Kender was not informed of this information by the Harwich Police Department. *See* Plaintiff's Doc.Aff., Exhibit 2 Deposition Testimony of Sargent Christopher Kender) at pgs. 47-48.

Upon leaving the police station to serve the warrant of apprehension, Officer Kender did not bring any particular police gear with him.  *See* Plaintiff's Doc.Aff.,

---

[1] In their brief, Defendants Kender and Mitchell set forth a section entitled Background to Complaint (Section IV.A).  That section starts: "The following facts are not subject to dispute…"  Plaintiff objects to this statement, and the facts that follow, because as shown in the response to Defendants' Statement of Undisputed Facts, many of the facts set forth are indeed in dispute.  This section of Defendants' brief, therefore, should be stricken and the facts taken in the light most favorable to Plaintiff.

4

Exhibit 2, Deposition Testimony of Sargent Christopher Kender) at pg. 48.  Officer Kender was unsure at his deposition about whether Lieutenant Mitchell was wearing a police badge on November 30, 2001.  *See* Plaintiff's Doc.Aff., Exhibit 2, Deposition Testimony of Sargent Christopher Kender) at pg. 50.

Mr. Bates did not hear Defendants' entry into his home and did not invite them in. See Plaintiff's Doc.Aff., Exhibit 3, pg. 101.  Mr. Bates had no conversation with police prior to their entry.  Id., pg. 118.  The Officers had approached Mr. Bates' apartment with stealth. Id., pg. 105.  The officers were trying to hide their presence. Id., pg. 108.  \

Officer Kender opened the door to Mr. Bates' apartment and pushed his pistol through.  Id., pg. 102.  When Officer Kender pushed the barrel of his gun through the doorway, Mr. Bates hit it twice - - also hitting the officer's hand.  Id., pg. 105-106; pg. 109; pg. 123.  Mr. Bates then slammed the door shut, knocking an officer down.  Id., pg 102.  The officers then forced the door open.  Id., pg 102.  Mr. Bates saw the uniformed officer (Kender) crouched down in a shooting stance with his gun. Id., pg. 104-105.  As the officers attempted to re-enter Mr. Bates' apartment, he held the door but wanted to get away from the door because he feared being shot.  Id., pg. 111.

Once the officers gained re-entry into the apartment, Mr. Bates was shot in the back.  *See* Plaintiff's Doc.Aff., Exhibit 4.  After being shot, Mr. Bates fell into his apartment.  Id., Exhibit 3, pg. 121.  Once Mr. Bates was felled by the gunshot, he was attacked by the Defendants.  He was kicked, punched and slapped.  Id., pg. 121-122.

      B.      <u>Plaintiff's Excessive Force Claims Against Mitchell</u>

Defendant Mitchell erroneously contends that he is absolved of all civil liability for using excessive force merely because he did not pull the trigger of his gun and shoot

5

Mr. Bates. He is incorrect for two reasons. First, Mr. Bates testified that after the shooting, and while he lied incapacitated on the ground, both Defendants Mitchell and Kender continued to batter him. Defendant Mitchell is responsible for this excessive use of force – independent of the gun shot wound. *See Yang v. Hardin,* 37 F.3d 282, 286 (7th Cir. 1994) ("each police officer present has an independent duty to act"); *Anderson v. Branen,* 17 F.3d 552, 556 (2nd Cir. 1994)(holding as error District Court's refusal to instruct jury that law enforcement officials have a duty to intervene when fellow officers are committing constitutional violations in his presence).

Second, Defendant Mitchell is also liable for the gunshot inflicted by Kender. Lieutenant Mitchell was Officer Kender's superior on the day of the shooting and was acting in a supervisory role. A supervisor may be liable in these circumstances where (1) the supervisor had actual knowledge that the conduct engaged in by the subordinate posed an unreasonable risk of constitutional injury; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference or tacit authorization of the practice; and (3) that there was an affirmative causal link between the supervisors inaction and the injury suffered. Shaw v. Stroud, 13 F. 3d 791, 798 (4th Cir. 1994); *see also Camilo-Robles v. Hoyos*, 151 F.3d 1 (1st Cir. 1998). In essence, if the jury determines that Defendant Mitchell's conduct or inaction was deliberate, reckless or made with callous indifference to Mr. Bates' constitutional rights, he isliable for the shooting. *Gutierrez-Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir. 1989); s*ee also Maldonado-Denis v. Castillo-Rodriguez,* 23 F.3d 576, 582 (1st Cir. 1994)(gross

negligence can signify deliberate indifference and serve as a basis for supervisory liability if causally connected to the actions that work the direct constitutional injury).[2]

Moreover, Mr. Bates testified that the officers appeared to be working in tandem and Defendant Mitchell, the supervisor, had positioned Officer Kender in a crouched position – prepared to fire upon Mr. Bates rather than simply execute the warrant of apprehension. Given Defendant Mitchell's admitted years of knowledge of Mr. Bates' psychological issues, these instructions to Officer Kender were reckless. In this case, a jury is entitled to find that Lieutenant Mitchell showed a callous indifference toward's Plaintiff's constitutional rights by, among other things: entering his home without knocking or adequately announcing his presence; conducting an in-home apprehension while not wearing police identification or uniform; sticking his gun into Plaintiff's apartment before identifying himself or otherwise informing Plaintiff that he was a police officer; and positioning Officer Kender in a manner that made it likely that he would improperly discharge his firearm.

    C.    <u>Plaintiff's Excessive Use of Force Claim Arising from the Shooting Cannot be Dismissed as Against Kender</u>

    1.    <u>Standards to Be Applied to Excessive Use of Force</u>

The constitutionality of an officer's use of deadly force is judged under the Fourth Amendment's "objective reasonableness" standard. *Brosseau v. Haugen,* 543 U.S. 194, 197, (2004) *quoting Graham v. Connor,* 490 U.S. 386, 388 (1989). When determining

---

[2] The First Circuit has also noted that the culpability necessary for supervisor liability does not have to be proved by establishing a pattern of such behavior by the supervisor. *Gutierrez-Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir. 1989)("An inquiry into whether there has been a pattern of past abuses or official condonation thereof is only required when a plaintiff has sued a municipality. Where . . . plaintiff has brought suit against the defendants as individuals . . . plaintiff need only establish that the defendants' acts or omissions were the product of reckless or callous indifference to his constitutional rights and that they, in fact, caused his constitutional deprivations.")

whether an officer's use of force during a seizure was objectively reasonable, the First Circuit has held that the "totality of the circumstances" must be considered. *Young v. City of Providence Ex Rel. Napolitano,* 404 F.3d 4, 22 (1st Cir. 2005); *citing Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985)(noting the need for examining the totality of the circumstances to determine the reasonableness of intrusion upon Fourth Amendment interests). "[T]he reasonableness of such an intrusion depends on not only when a seizure is made, but also how it is carried out." *Tennessee,* 471 U.S. at 8; *citing United States v. Ortiz,* 422 U.S. 891, 895 (1975); *Terry v. Ohio*, 392 U.S. 1, 28-29 (1968).

In considering the totality of the circumstances, the events leading up to a seizure must be considered when assessing the reasonableness of the officer's use of force. *See Abraham v. Raso,* 183 F.3d 279, (3d Cir. 1999)(holding that the totality of the circumstances standard requires an analysis of the events leading up to the seizure and use of force); *compare Greenidge v. Ruffin,* 927 F.2d 789, 791-792 (4th Cir. 1991)(interpreting the "split-second" language in *Graham* as limiting the analysis to only the moment when the decision to use certain force was made).

The First Circuit, in two decisions, has decided to consider the actions of a police officer leading up to a shooting, and not limit its analysis to only those circumstances which existed at the moment of the decision to shoot.[3]  *St. Hilaire v. City of Laconia,* 71 F.3d 20, 26 (1st Cir. 1995)(rejecting analysis that police officers' actions need be examined for "reasonableness" under the Fourth Amendment only at the moment of the

---

[3] In the Hilaire decision, the First Circuit noted that an examination of all the surrounding circumstances also took place in *Roy v. Lewiston,* although the expanded examination was not formally adopted in *Roy. St. Hilaire v. City of Laconia,* 71 F.3d 20, 26 (1st Cir. 1995)("Similarly, in *Roy v. Lewiston*, this court examined all of the surrounding circumstances in determining whether the police acted reasonably: 'Roy was armed; he apparently tried to kick and strike at the officers; he disobeyed repeated instructions to put down the weapons . . .' *Roy v. Lewiston,* 42 F.3d 691, 695 (1st Cir. 1994)."

8

shooting); *see also Brower v. Inyo,* 489 U.S. 593, (1989)(as cited in *Hilaire* "once it has been established that a seizure has occurred, the court should examine the actions of the government officials leading up to the seizure"). In *Napier v. Town of Windham*, the First Circuit affirmed its holding in *Hilaire*, and also noted that "the pre-confrontation actions themselves could theoretically serve as the unreasonable conduct on which a § 1983 claim is based. *Napier v. Town of Windham*, 187 F.3d 177, 188 (1st Cir. 1999).

      2.      <u>Pre-Confrontation Actions Show Objective Unreasonableness</u>

At the time of their entry into Mr. Bates' residence, both officers were aware of the allegations that he had severe mental illness and may not react well to being surprised in his apartment by police. The officer's pre-confrontation behavior must be viewed in light of this knowledge. For instance, in *Ludwig v. Anderson*, the Eighth Circuit held that whether the Plaintiff was emotionally disturbed was material to the reasonableness of the officers' actions. *Ludwig v. Anderson*, 54 F.3d 465, 472 (8th Cir. 1995).

Defendants in this matter acknowledge that Mr. Bates was emotionally disturbed. In *Ludwig,* the Court found Plaintiff's emotional disturbance to be material because "standard police procedure regarding emotionally disturbed persons differs greatly from that regarding emotionally stable persons." *Id.* Similarly, in *Deorle v. Rutherford*, the Ninth Circuit held that "we emphasize that where it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining, under *Graham*, the reasonableness of the force employed." *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001). There is no evidence that Officer Kender and Lieutenant Mitchell properly took Mr. Bates' mental issues into account when they stealthily entered his house with guns drawn.

In *Napier v. Town of Windham,* the First Circuit held that "the pre-confrontation actions themselves could theoretically serve as the unreasonable conduct on which a § 1983 claim is based." *Napier v. Town of Windham,* 187 F.3d 177, 188 (1st Cir. 1999). Due to the secretive approach Defendants' took to Mr. Bates' home, the issue of whether they "knocked and announced" is plainly at issue. Mr. Bates testified that he did not hear the officers knock and announce their presence, but rather that he first noticed a gun protrude into his home and that the officers appeared to be hiding. Failure to do so is a violation of a clearly established right. *Hilaire v. City of Laconia,* 71 F.3d 20, 28 (1st Cir. 1995) *citing Wilson v. Arkansas,* 514 U.S. 927 (1995) (noting that a police officer's duty to knock and announce before serving a warrant was clearly established in the First Circuit by the decision in *Wilson*). In this case, as in *Hilaire*, the factual controversy regarding whether the police officers did "knock and announce" should be resolved in favor of the plaintiff at summary judgment. *Hilaire,* 71 F.3d at 25 ("While an inference can be drawn from the deposition testimony of the officers that St. Hilaire simply did not hear the identifications given by the police, another plausible inference could be drawn that the police did not identify themselves. . . . Where "inferences to be drawn from the web of facts are disputed and unclear – and are likely to depend on credibility judgments," there is a dispute of fact).

      3.      <u>Kender's Shooting of Mr. Bates Was Objectively Unreasonable</u>

Even if the pre-confrontation actions of the Defendants are found to be reasonable, Officer Kender's shooting of a retreating Mr. Bates in the back was not. Officer Kender justifies his use of force because he claims that he was in immediate fear for his life. The facts surrounding the shooting bring into question whether any

10

reasonable officer could have been in fear for his life under the same circumstances. Indeed, Officer Kender's version of events is unsupported by the physical evidence (namely the gunshot wound to the back).

The reader must be reminded here that Defendants submit a number of "undisputed facts" in their brief that are, indeed, disputed by Mr. Bates. In particular, the severity of the circumstances faced by Officer Kender, and upon which he purportedly based his decision to use deadly force, are in question. Among other things, Mr. Bates disputes that he chased the officers down the stairs – swinging the hockey stick at their heads (i.e. putting them in fear for their lives). Instead, he testified that he hit one officer on the hand with the hockey stick and slammed the door on the other officer. Most important, Mr. Bates' testimony is corroborated by the only unbiased (physical) evidence available – the fact that he was shot in the back by Officer Kender. Indeed, Officer Kender's version of events seems not only improbable, but impossible. If he was being charged by Mr. Bates (i.e. face-to-face) and fired his gun directly at Mr. Bates' center mass as he claims, there can be no explanation for the fact that Mr. Bates was shot squarely in the back.

Defendants are also not assisted by the claim of "exigent" circumstances or that they feared that Mr. Bates might escape or harm others in the area. First, Mr. Bates was trapped in his enclosed second floor apartment – the only means of egress being exactly where the officers stood with their guns drawn. Second, even if Defendants could assert escape was "possible," that fact alone does not allow for the use of deadly force. *See Tennessee v. Gardner*, 471 U.S. 1, 11 (1985) ("The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally

11

unreasonable. It is not better that all felony suspects die than that they escape.")  The officers 'fears' the Mr. Bates would escape and potentially harm the community are post shooting creations that are not supported by facts on hand at the time.

In this case, a jury determination about the objective reasonableness of Officer Kender's actions is required, in large part, because Lieutenant Mitchell, when faced with the same factual situation, did not fire his weapon. Indeed, one officer's refusal to fire certainly casts doubt on the propriety of the other officer's use of deadly force. Lieutenant Mitchell's failure to shoot the Plaintiff shows that, when faced with the same situation, a police officer made an objectively reasonable determination that the use of deadly force was not warranted.

  4. <u>Plaintiff's Claims are Not Barred by the Heck Doctrine</u>

*Heck v. Humphrey*, 512 U.S. 477 (1994) does not apply to this action because Mr. Bates was convicted of battering the police officers with a hockey stick and door – the facts of which he does not contest in this suit. Mr. Bates asserts that *after* that battery took place, Defendants unreasonably used excessive force in shooting him and then unlawfully beating him. In *Heck*, conversely, the plaintiff attempted to collaterally attack his underlying conviction for manslaughter by alleging an elaborate scheme by law enforcement authorities to deprive him of a fair trial and improperly imprison him. *Id*., at 479. He allegedly sought Section 1983 damages for that improper imprisonment. The Court there noted that to establish the basis for such damages, Heck would necessarily demonstrate the invalidity of the underlying conviction  *Id*., at 481-482. The holding in *Heck,* therefore, was targeted at the narrow issue of whether, and under what circumstances, an inmate could recover Section 1983 damages for unconstitutional

conviction and imprisonment or other harm caused by actions that would render a conviction or sentence invalid. *Id*., at 486.

A Section 1983 suit may only be dismissed under the *Heck* doctrine if a judgment in the plaintiff's favor would *necessarily* imply the invalidity of his conviction. *Id*., at 486-487. It is axiomatic that the *Heck* doctrine does not preclude a subsequent claim for excessive use of force – even where the plaintiff has first assaulted the officers. *See, e.g. Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005), cert. denied, 545 U.S. 1128 (2005)(en banc-)(conviction for assault on police officer does not preclude suit for excessive force since record leaves open the possibility that the excessive force was used after the assault); *Nelson v. Jashurek*, 109 F.3d 142 (3d Cir. 1997)(conviction for resisting arrest did not bar claim for excessive force). Since a judgment on Mr. Bates' claim for excessive use of force *after* his battery on the police officers would not imply that his conviction for battery of the police officers was invalid, Defendants' motion for summary judgment must be denied.

In *Smithart v. Towery,* the Ninth Circuit reasoned that "the plaintiff's claim that officers used force far greater than that required for his arrest is conceptually distinct from his conviction for assault with a deadly weapon, and that a successful suit on the former would not necessarily imply the invalidity of the latter. . .." 79 F.3d 951, 952-953 (9th Cir. 1996) (alleged beating of plaintiff during his arrest did not invalidate conviction for assault and battery with a deadly weapon). Similarly, in *Ballard v. Burton,* the Fifth Circuit held that a defendant's conviction for simple assault, arising out of his pointing a rifle at police officers, would not necessarily be invalidated by a civil verdict on Plaintiff's § 1983 claims. *Ballard v. Burton,* 444 f.3d 391, 401 (5th Cir. 2006).

The *Ballard* Court dealt with the precise question at issue here: "[i]f it is possible for [plaintiff] to have assaulted [the officer] and for [the officer's] shooting of [plaintiff] to have been objectively unreasonable, then Heck does not bar [plaintiff's] claim." *Id.* at 398. Indeed, the First Circuit has recently recognized an exception to the *Heck* doctrine in its decision in *Thore v. Howe*. 466 F.3d 173 (1st Cir. 2006). In *Thore*, the Court held that *Heck* did not bar the Plaintiff's claims because the plaintiff alleged that "by the time of the shooting, [he] was stationary in a car, boxed in with nowhere to go, and posed no threat to the officers, who had been told that he had no gun." *Id.*, at 180. Much like the plaintiff in *Thore*, at the time Mr. Bates was shot he was in a purely defensive position (i.e. with his back to Officer Kender) and could not have placed Officer Kender in fear for his life. At the moment he shot Mr. Bates, therefore, Officer Kender was not at liberty to use deadly force. Further, Mr. bates was physically contained within the confines of his apartment as the officers were blocking his only means of exit.

"[E]xcessive force used after a defendant has been arrested may properly be the subject of a § 1983 action notwithstanding the defendant's conviction on a charge of resisting an arrest that was itself lawfully conducted. *Smith v. City of Hemet,* 394 F.3d 689, 696 (9th Cir. 2005); *citing Sanford v. Motts*, 258 F.3d 1117, 1119-20 (9th Cir. 2001) (explaining that a successful § 1983 suit based on excessive force would not necessarily imply the invalidity of Sanford's conviction under § 148(a)(1) because the officer's use of excessive force occurred subsequent to the conduct for which Sanford was convicted under § 148(a)(1))." The force used by the officers after Mr. Bates was shot was not simultaneous to plaintiff's own use of force against the officers, and would have no

14

bearing on any conviction of plaintiff for assault and battery with a dangerous weapon. Such a use of force is patently excessive in light of plaintiff's near mortal wound.

     5.   <u>Kender is not Entitled to Qualified Immunity</u>

The defense of qualified immunity does not provide summary judgment fodder for Officer Kender. The First Circuit has identified two prongs to the basic qualified immunity analysis. *Hegarty v. Somerset*, 53 F.3d 1367, 1373 (1st Cir. 1991); *quoting Burns v. Loranger*, 907 F.2d 233, 235-36 (1st Cir. 1990). First, the Court must establish whether the constitutional right asserted by the plaintiff was "clearly established" at the time of the alleged violation. *Id*. Second, the Court must ask whether "a reasonable official situated in the same circumstances should have understood that the challenged conduct violated that established right." *Id. quoting Burns*, 907 F.2d at 236).

> A. *The first prong of Qualified Immunity – Was the constitutional right asserted by the plaintiff clearly established at the time of the alleged violation?*

For purposes of determining qualified immunity, the officer's actions are measured by a standard of "objective legal reasonableness . . . in light of the legal rules that were clearly established at the time [they] were taken." *St. Hilaire v. City of Laconia,* 71 F.3d 20, 24 (1st Cir. 1995). In a footnote, the *Hilaire* court noted that "the objective reasonableness standard for liability is most likely the same as that for a qualified immunity defense." *Id.,* at n. 2; *citing Roy v. Inhabitants of the City of Lewiston,* 42 F.3d 691, 694 (1st Cir. 1994). It cannot be seriously argued that the facts here, in the light most favorable to Mr. Bates, show that the officers knew that shooting Mr. Bates in the back and then beating him would violate excessive use of force rules.

15

> B. *The Second prong of Qualified Immunity – Would a reasonable official situated in the same circumstances understand that the challenged conduct violated an established right?"*

Defendants argue that they acted reasonably because they were "confronting a mentally disturbed suspect attacking both [of them] with a hockey stick in a manner that could have rendered either or bother *(sic)* officers unconscious." *See* Defendants Brief, p. 18. First, as stated repeatedly above, this argument fails at summary judgment because not only does it assume facts that are in dispute, it assumes those facts in the light most favorable to the Defendants rather than Plaintiff. Mr. Bates admits that he hit one officer with a hockey stick in the hand and the other by shutting the door on him. He disputes that he was menacing the officers with a hockey stick, that he hit them in the head with the stick, or that he pursued them after the initial contact. Moreover, the physical evidence supports Mr. Bates' statements because he was shot in the back – an impossible feat should Defendants story be believed. Therefore, this case is starkly different than the two cases cited by Defendants: *Roy v. Inhabitants of the City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994), where it was undisputed that the suspect attacked the police while brandishing two knives, and *Napier v. Town of Windham*, 187 F.3d 177, 183 (1st Cir. 1999), where the suspect was actually aiming a gun at the officers.

6. Plaintiff's Claim of Excessive Use of Force After the Shooting Create an Issue of Fact Inappropriate for Summary Judgment

Defendants admit that Plaintiff testified that the officers used excessive force against him after he was shot when they "jumped on top of me and started beating me up." *See* Defendants' Statement of Undisputed Material Facts, Par. 35. They try to convince the Court, however, that this obvious issue of material fact is ripe for summary

judgment simply because the Court, rather than a jury, should decide who is telling the truth. This the Court, at summary judgment, cannot do.

Defendants attempt to base the "fact" that he was not beaten by the officers by cherry picking a single two-page document from his medical record (Clinical Resume) – a medical record that includes hundreds of pages of treatment. *See* Defendants' Statement of Undisputed Material Facts, Par. 25 and 36. Defendants baldly claim that that single medical record reflects "no injuries consistent with the alleged post-shooting beating." Defendants' Memorandum, p. 20. First, this is a medical opinion that the Defendants' attorneys are not permitted to make at summary judgment. Second, the document is merely an overview of treatment – dealing specifically with Mr. Bates' most acute injury (which was the gun shot wound, of course). Third, even the document selectively submitted by Defendants shows injuries that are consistent with the beating alleged by Mr. Bates (i.e. even though he was shot in the spine, Mr. Bates sustained injuries to his spleen and kidney as well). At trial, Mr. Bates is certainly entitled to call his treating physicians to testify to the cause and extent of his injuries.

      7.      <u>Plaintiff's Intentional Tort Claims Should Proceed</u>

For the reasons set forth above, Plaintiff has stated valid claims for assault and battery and intentional infliction of emotional distress that cannot be correctly determined at summary judgment.

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS TOWN OF HARWICH AND HARWICH POLICE DEPARTMENT**

An allegation of a local government's failure to train police officers who then violate a plaintiff's constitutional rights is actionable where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact

and where the identified deficiency in a city's training program is closely related to the ultimate injury. *Young* v. *City of Providence*, 404 F.3d 4, 27 (1st Cir. 2005), citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). The United States Supreme Court has suggested that liability in a failure-to-train claim without a pattern of previous constitutional violations will be appropriate where a violation of a federal right is a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. *Young* v. *City of Providence*, 404 F.3d 4, 28 (1st Cir. 2005); *citing Bd. Of the County Comm'Rs v. Brown*, 520 U.S. 397, 409 (1997).

In this case, the record shows that neither the Town nor the Police Department trained the individual Defendants in apprehending mentally disturbed suspects. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n. 10 (1989) (the need for training in the area of deadly force is so obvious that failure to train would amount to deliberate indifference); *see also Allen v. Muskogee*, 119 F.3d 837, 845 (10th Cir. 1997) ("The likelihood that officers will frequently have to deal with armed emotionally upset persons, and the predictability that officers trained to leave cover, approach and attempt to disarm such persons will provoke a violent response, could justify finding that the City's failure to properly train its officers reflected deliberate indifference to the obvious consequence of the City's choice.") The Department's failure to train in this area is evidenced by a review of the Department's own Use of Force Policy which shows that there are no policies or procedures in place regarding the apprehension of mentally or emotionally upset individuals and the use of force in regards to them. *See* Defendants' Undisputed Material Facts, Ex. E. Had there been appropriate training in this area, the jury could find that Mr. Bates would not have suffered the injuries shown in his medical

records.  For the foregoing reasons, all claims against the Town and Department should survive summary judgment.

**WHEREFORE**, Plaintiff respectfully requests that the motions for summary judgment of all defendants be DENIED.

Respectfully submitted,

GLENN S. BATES

By his attorneys,

/s/ Timothy J. Perry
Timothy J. Perry (BBO#631397)
Gregory T. Donoghue (BBO#661480)
PRETI FLAHERTY BELIVEAU & PACHIOS LLP
10 High Street, Suite 502
Boston, MA  02110
TEL (617) 226-3800
FAX (617) 226-3801

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true copy of the above document was served upon counsel of record, listed below, vie the Court's ECF system and by pre-paid First Class, United States Mail.

Joseph L. Tehan, Esq.
Jackie Cowin, Esq.
Kopelman and Paige, P.C.
101 Arch Street
Boston, MA 02110

Charles D. Mulcahy, Esq.
Wynn & Wynn
90 New State Highway
Raynham, MA 02767

Dated: January 19, 2007

/s/ Gregory T. Donoghue
Gregory T. Donoghue